JOHNSON V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-04-562-CR

CHRISTOPHER GEORGE JOHNSON, JR. APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Introduction

Appellant Christopher George Johnson, Jr. made an open plea of guilty to aggravated robbery and waived his right to have a jury assess punishment.  After a punishment hearing, the trial court sentenced him to ten years’ incarceration.  The gist of Appellant’s complaint on appeal is that he was not aware that he would be ineligible for “probation” if punishment were assessed by the trial court.  In his first point, Appellant argues that he was denied effective assistance of counsel because his court-appointed lawyer did not tell him that he was ineligible for probation.  In his second point, he argues that the trial court erred by failing to admonish him that he was ineligible for probation.  We affirm.

Background

A grand jury indicted Appellant for aggravated robbery.  
When his case was called for trial, Appellant made a written judicial confession and open plea of guilty and waived his right to have a jury assess punishment.  The trial court admonished Appellant of the consequences of his plea in writing, and Appellant acknowledged receipt of the admonishments by signing them. 

The trial court then conducted a hearing on punishment.  The State elicited testimony from four victims of Appellant’s robbery.  Appellant and his mother testified on Appellant’s behalf.  At the conclusion of the hearing, the trial court sentenced Appellant to ten years’ confinement.

Discussion

“Probation,” properly called community supervision, is governed by article 42.12 of the code of criminal procedure.  
See
 
Tex. Code Crim. Proc. Ann.
 art.
 42.12 (Vernon Supp. 2005).  A jury that imposes confinement as a punishment for an offense may recommend to the judge that the judge suspend imposition of the sentence and place the defendant on community supervision.  
Id.
 § 4a.  But when the judge, rather than a jury, assesses punishment, the judge may not place the defendant on community supervision if the defendant is adjudged guilty of (among other crimes) aggravated robbery.  
Id
. § 3g.  A judge may, however, defer the adjudication of guilt and place the defendant on community supervision when the defendant pleads guilty or nolo contendere.  
Id.
 § 5.

In this case, Appellant pleaded guilty to aggravated robbery and waived his right to a jury.  Therefore, the trial court had the option to defer the adjudication of guilt and place Appellant on community supervision, but it could not place Appellant on community supervision if it found him guilty.  
See
 
id.
  §§  3g, 5.  With this in mind, we turn to Appellant’s points on appeal.

Ineffective assistance of counsel

We apply a two-pronged test to ineffective assistance of counsel claims.  
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Thompson v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  First, Appellant must show that 
his
 counsel’s performance was deficient; second, Appellant must show that the deficient performance prejudiced the defense.  
Strickland
, 466 U.S. at 687, 104 S. Ct. at 2064; 
Hernandez v. State
, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.  
Thompson
, 9 S.W.3d at 813.  The issue is whether counsel’s assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  
See Strickland
, 466 U.S. at 688-89, 104 S. Ct. at 2065.  “[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.”  
Id.
 at 690, 104 S. Ct. at 2066.  An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.  
Thompson
, 9 S.W.3d at 813.  Our scrutiny of counsel’s performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight.  
Strickland
, 466 U.S. at 689, 104 S. Ct. at 2065.

Direct appeal is usually an inadequate vehicle for raising an ineffective assistance of counsel claim because the record is generally undeveloped.  
Goodspeed v. State
, No. PD-1882-03, 2005 WL 766996, at *2 (Tex. Crim. App. April 6, 2005).  An application for a writ of habeas corpus is the more appropriate vehicle to raise such a claim.  
Rylander v. State
, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). 
 This is true with regard to the question of deficient performance—in which counsel’s conduct is reviewed with great deference, without the distorting effects of hindsight—where counsel’s reasons for failing to do something do not appear in the record.  
Goodspeed
,  
2005 WL 766996, at *2.
  The court of criminal appeals has said that “trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective.”  
Id
. (citing 
Rylander
, 101 S.W.3d at 111).  Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it.  
Id
. 

Appellant does not actually contend that his trial lawyer failed to tell him that he would be ineligible for community supervision under section 3g.  Instead, he argues that his “plea of guilty was 
likely
 ill-premised . . . in a setting that would [lead] any layperson to believe that probation was available and under deliberation.” [Emphasis added.]  Appellant points to a pretrial “application for probation” and the use of the word “probation” during his punishment hearing to suggest that he was misled into thinking that he was eligible for community supervision. 

The application for probation was filed almost three weeks before Appellant pleaded guilty.  The application simply asserts that Appellant had never been convicted of a felony.  The application is signed by his lawyer, but the affidavit attached to the application and swearing to its truth was not executed by Appellant.  The application does not show what, if anything, counsel told Appellant about the availability of community supervision.  Nor is there anything in the record to suggest that the application was filed in anticipation of or connection with Appellant’s guilty plea and jury waiver.  

With regard to the use of the term “probation” at the punishment hearing, the record reflects that Appellant asked the court for “deferred probation,” and that his lawyer argued to the court that Appellant deserved “deferred probation.”  Appellant also testified that he and his attorney had “talked about the fact that this is what’s called a 3 - G offense” and that he understood the consequences of a “3 - G offense.”  Counsel also questioned Appellant’s mother about her understanding of the consequences of “deferred probation.” Both Appellant and his mother agreed that if the trial court placed Appellant on “deferred probation” and Appellant violated a condition of probation, Appellant “could go to the penitentiary for life.” 

Taken in context, it appears that the term “deferred probation,” as used by Appellant’s counsel, meant deferred adjudication community supervision.  It is difficult to imagine what else “deferred probation” could mean.  In addition, Appellant acknowledged that aggravated robbery is a “3 - G” offense, an apparent reference to section 3g of article 42.12, which precludes “ordinary” community supervision as a punishment for aggravated robbery when the trial court assesses punishment.

Appellant’s and his mother’s testimony that the trial court could sentence Appellant to life in prison also suggests that they understood that counsel was talking about deferred adjudication community supervision.  Assuming that ordinary community supervision was available (i.e., assuming that Appellant had not pleaded guilty to a section 3g offense),  the trial court could not place Appellant on community supervision if it sentenced him to more than ten years’ confinement.  
See
 
Tex. Code Crim. Proc. Ann.
 art.
 42.12, § 3(e)(1).  Thus, if the trial court placed Appellant on ordinary community supervision and Appellant violated a condition of community supervision, he would face at most ten years’ imprisonment.  But if the trial court deferred adjudication and placed Appellant on community supervision, and Appellant violated a term of community supervision, the trial court could consider the full range of punishment for aggravated robbery, all the way up to life in prison.  
See id.
 § 5(b); 
Tex. Penal Code Ann.
 §
 12.32(a) (Vernon 2003).  If a violation of a condition of “deferred probation” could land Appellant in prison for life, “deferred probation” could only mean deferred adjudication community supervision.

Based on the scant record before us, we cannot say that the conduct of Appellant’s attorney was so outrageous that no competent attorney would have engaged in it.  
See
 
Goodspeed
,  
2005 WL 766996, at *2
.  Until Appellant’s trial counsel has an opportunity to explain his actions, we cannot denounce them as ineffective.  
See id.
  We therefore overrule Appellant’s first issue.

Trial court’s admonishments

A trial judge has an affirmative duty to admonish a defendant on the range of punishment attached to the offense before the court may accept the defendant’s plea of guilty.  
Tex. Code Crim. Proc. Ann.
 art.
 26.13(a)(1) (Vernon Supp. 2005).  The judge has no duty to admonish the defendant as to his eligibility for community supervision.  
See Ex parte Williams
, 704 S.W.2d 773, 775 (Tex. Crim. App. 1986).  But if the judge volunteers information about community supervision to the defendant, the information must be accurate; otherwise, a trial court would be free to inaccurately admonish on community supervision
, thus misleading a defendant, simply because there was no initial duty to admonish.  
See id.
 at 776.  Thus, a guilty plea is involuntarily induced: (1) when a defendant shows that the trial court volunteered an admonishment that included information on the availability of community supervision
, thereby creating an affirmative duty on the part of the trial judge to provide accurate information on the availability of community supervision, (2) when a defendant shows that the trial court provided him with inaccurate information on the availability of community supervision, thereby leaving the defendant unaware of the consequences of his plea, and (3) when a defendant makes an objective showing that he was misled or harmed by the inaccurate admonishment.  
See id.
 at 776-77.

Appellant concedes that the trial court did not provide him with inaccurate information about community supervision.  The only references in the record to information provided by the trial court to Appellant about community supervision appear in the trial court’s written plea admonishments, and those refer specifically to deferred adjudication community supervision, not “ordinary” community supervision.  But Appellant argues that the trial court allowed others to provide him with inaccurate information about community supervision, and that imposed a duty on the trial court to provide him with accurate information.

We disagree with Appellant’s contention.  First, the record does not affirmatively reflect that anyone provided Appellant with inaccurate information about community supervision.  His trial attorney’s questions and argument about “deferred probation” are ambiguous at most and do not show what his lawyer actually told Appellant about the availability of community supervision.  Second, Appellant cites no authority for the proposition that another person’s misrepresentation about community supervision imposes a duty on the trial court to provide accurate information, and our own research has discovered none.

Appellant points to other circumstances that he claims demonstrate his misunderstanding about community supervision.  First, Appellant alleges that his co-defendants all received “probation.”  Second, Appellant points to his adjudication of delinquency and related probation some time before the instant conviction.  The sentences imposed on Appellant’s co-defendants do not appear in the record.  Appellant’s adjudication of delinquency does appear in the record, and Appellant testified that he was put on “probation” as part of the adjudication, but there is nothing in the record from which the trial court might have inferred that Appellant thought his “probation” in the earlier case meant he was eligible for community supervision in this case.  Moreover, even if we could infer from these circumstances that Appellant thought he was eligible for community supervision, Appellant does not explain how they imposed a duty on the trial court to correct Appellant’s alleged misunderstanding.

We hold that under the circumstances presented by this case the trial court had no duty to provide Appellant with accurate information about the availability of community supervision.  We overrule Appellant’s second point.

Conclusion

Having overruled both of Appellant’s points, we affirm the judgment of the trial court.  
See 
Tex. R. App. P.
 43.2(a).

ANNE GARDNER

JUSTICE

PANEL F: CAYCE, C.J.; GARDNER and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: March 9, 2006

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.